IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| HENRY JOHN PRIEN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. CV08-465-S-BLW |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| JOHANNA SMITH and BARBRA JOHNSTON, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court are Motions for Summary Judgment filed by Defendants Barbra Johnston ("Johnston") and Johanna Smith ("Smith") (Docket Nos. 31 and 40). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

### DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**A. Background**

Plaintiff Henry Prien ("Prien") is in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at the Idaho State Correctional Institution (ISCI). Defendant Johanna Smith is the Warden at ISCI. Defendant Barbra Johnston is a

registered nurse who is the Director of Nursing for Correctional Medical Services ("CMS"). CMS' medical staff is responsible for providing medical care to the inmates. Plaintiff filed his 42 U. S. C. § 1983 action claiming these two Defendants violated his Eighth Amendment rights by acting deliberately indifferent to his allergy to onions and in properly caring for his injured hand. Defendants each deny that they are responsible for the alleged medical decisions regarding Plaintiff's health and claim they did not act with deliberate indifference.

As to the allergy to onions, the Defendants do not dispute that Plaintiff took a standard RAST allergy blood test that indicated a positive result for an allergy to onions. CMS' Regional Medical Director, April Dawson, M.D., is responsible for determining if an inmate should be placed on a special diet. Dr. Dawson, maintains that the RAST result does not establish the severity of the allergy and based on the other medical information and the fact that Plaintiff has purchased foods with onion and onion powder as ingredients, a special onion free diet is not medically necessary. Dr. Dawson states in her affidavit that "the RAST test does not provide a medical basis on which to determine whether an allergic condition in a given patient is 'clinically significant'" and a "sensitized individual maybe entirely asymptomatic upon exposure to the allergen in question." Docket No. 33, ¶ 22. Plaintiff has not rebutted the medical opinion of Dr. Dawson regarding the impact of the RAST test not being conclusive and reargues that he has had a special diet approved in the past and he does not want to risk his health by eating onions. Plaintiff maintains when he eats onions he gets sores in his mouth, but

**MEMORANDUM ORDER - 2**

does not deny that he purchased some items at the prison commissary that contained onions and/or onion powder as ingredients.

It is also undisputed that Johnston did make a mistake when she indicated in a response to a grievance, that Prien did not have medical records indicating an allergy to onions. As stated above, Prien's extended medical records do reflect that he has a positive RAST allergy test for onions and in the past, he has been placed on a special diet.

The authority for determining whether an inmate should be placed on a special diet has been changed to the Regional Medical Director for CMS instead of the prison doctors or PAs making this determination. Defendants acknowledge that in the past, the regional dietian, Katie Hall and PA Tom Hengst recommended Plaintiff be placed on an onion free special diet. These recommendations occurred before the IDOC policy changed to transfer authority for the special diet determination to the Regional Medical Director for CMS. Moreover, after this lawsuit was instigated, Plaintiff had the opportunity to meet directly with Dr. Dawson regarding his diet concerns. Such meeting did not change Dr. Dawson's medical opinion regarding the request for a special diet.

As to Plaintiff's alleged hand injury, it is undisputed that Plaintiff fell while being transported on or about June 10, 2008. Plaintiff claims he filed several concern forms in order to get ISCI to x-ray his hand and asked for his hand to be examined when he was seen on June 11, 2008. The medical records indicate that a kite regarding his hand was submitted on June 23, 2009. The Plaintiff has not provided copies of any other medical requests regarding his hand. The medical records indicate that Plaintiff complained about

**MEMORANDUM ORDER - 3**

his arm and elbow immediately after the fall. Plaintiff was examined on June 11, 2008, by Tom Hengst, PA-C regarding complaints about his elbow. The medical records do not show Plaintiff raised any additional complaint regarding his hand. Elbow x-rays were taken on June 20, 2008 and the radiology report was negative for injuries to the elbow.

Plaintiff submitted an Offender Concern Form regarding his hand on June 23, 2008. Plaintiff's hand was examined on June 25, 2008 and x-rays were taken. Dr. Stander ordered that Plaintiff see an orthopedic specialist. Dr. Watkins, an orthopedic hand specialist, examined Plaintiff on July 2, 2008. Dr. Watkins did not recommend further treatment of Plaintiff's hand as his rotational alignment was normal.

On July 14, 2008, Plaintiff's hand was re-examined again by Dr. Stander who recommended a follow-up with Dr. Watkins. On July 21, 2008, Dr. Watkins indicated Plaintiff was to be seen on an as needed basis, but did not recommend any further treatment on Plaintiff's hand.

Defendants maintain no kites were submitted to CMS requesting further evaluation of Plaintiff's hand and that only one concern form was submitted regarding injuries to his hand. Plaintiff disputes this statement but has not provided the Court with copies of any other written requests for treatment of his hand.

### B. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

**MEMORANDUM ORDER - 4**

any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48. Material facts are those that may affect the outcome of the case. *See id.* at 248.

The moving party bears the initial burden demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence, but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his or her favor. *Id.* The non-moving party must go beyond the pleadings and show by affidavits or by discovery or disclosure materials that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c). *See also Celotex*, 477 U.S. at 324.

C.      Section 1983 Standard

**MEMORANDUM ORDER - 5**

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).[1]

Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Plaintiff asserts that Defendants have violated his Eighth Amendment right to have adequate medical care in prison. To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

---

[1] The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (quotation omitted).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). If the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing

**MEMORANDUM ORDER - 7**

that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment in favor of the defendants is proper. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

**D.   Defendants Did Not Violate Plaintiff's Eighth Amendment Right to Adequate Medical Care.**

1. Onion Allergy

There is no dispute that Plaintiff is allergic to onions on some level. Rather, the dispute between the parties is whether Plaintiff's allergy is severe enough to warrant a special medical diet. Defendants have met their burden of demonstrating that the medical care that Plaintiff received regarding his diet was adequate under Eighth Amendment standards. Defendant Johnston's conduct did not cause the denial of Plaintiff's requested medical diet and Defendant Smith was not deliberately indifferent in failing to second-guess the denial by Dr. Dawson.

a. Defendant Johnston did not personally participate in the decision to deny Plaintiff a medical diet free of onions, and she is not liable as a supervisor.

As stated above, a § 1983 plaintiff must show that the violations of his constitutional rights was *proximately caused* by the defendant. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), the court outlined the requirements for a finding of proximate causation:

> Liability under section 1983 arises only upon a showing of

**MEMORANDUM ORDER - 8**

>personal participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983.

In addition, a plaintiff may seek injunctive relief from officials who have direct responsibility in the area in which relief is sought. *See Rounds v. Oregon State Bd. Of Higher Education*, 166 F.3d 1032, 1036 (9th Cir. 1999); *Ex parte Young*, 209 U.S. 123, 157-58 (1908).

Here, Plaintiff alleges that his due process rights were violated by his not being given a special medical diet without onions or onion powder. Defendant Johnston is the Director of Nursing and in that capacity she does not make the decision on whether to grant or deny an inmate a special medical diet. Nor does she supervise the person who has the authority to make that decision. Rather, Plaintiff alleges only that Johnston failed to approve the grievance he filed requesting a special diet.

As discussed earlier, the only person who has authority to grant a special diet for medical reasons is the Regional Medical Director, Dr. Dawson. Defendant Johnston has no authority to approve a medical diet. Therefore, Defendant Johnston did not personally participate in the alleged deprivation of his medical diet, nor did Defendant Johnston have authority as a supervisor of the person who made the decision. Additionally, Plaintiff cannot succeed on his claim for injunctive relief because Defendant Johnston does not have direct responsibility over medical diets. Simply put, Plaintiff has not sued the

proper defendant.

Neither has Plaintiff shown that an independent cause of action lies for Defendant Johnston's denial of Plaintiff's grievance. The only allegations against Defendant Johnston are that she improperly denied Plaintiff's grievance. The law is clear that "[t]here is no legitimate claim of entitlement to a [prison] grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 898 (1988); *see Sandin v. Connor*, 515 U.S. 472 (1995) (noting that liberty interests are generally limited to freedom from restraint). As one court explained, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a 'mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Rather, where defendants' "only roles in [a civil rights] action involve the denial of administrative grievances or the failure to act. . . they cannot be liable under § 1983." *Id.*

Johnston admits she missed the allergy reference in Plaintiff's extended medical file when he filed a grievance, but the grievance process allows for an appeal of the grievance if the inmate believes the grievance was wrongly decided. Moreover, the denial of the grievance by Johnston did not keep other medical personnel from considering Plaintiff's request for a special diet. Johnston's denial of the grievance could not have impacted the decision regarding a special diet request as Johnston is not qualified to make medical diet decisions. For all these reasons, Defendant Johnston's Motion for Summary Judgment will be granted on the onion allergy.

**MEMORANDUM ORDER - 10**

b. Defendant Smith is not liable as a supervisor because Dr. Dawson's decision to deny Plaintiff a medical diet was not deliberately indifferent.

Plaintiff alleges that Defendant Smith knew of the decision to deny his request for a medical diet and failed to act to correct that decision as warden of the institution. Thus, Plaintiff is alleging supervisory liability against Defendant Smith. However, to show that Defendant Smith should be held liable based on the actions of Dr. Dawson, Plaintiff must first show that Dr. Dawson was deliberately indifferent to Plaintiff's medical needs.

Even though Plaintiff believes that he should have been given a medical diet free of onions, this is insufficient to maintain a claim of an Eighth Amendment violation. Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, [Plaintiff] must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk'" to Plaintiff's health. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996). There is simply no evidence that denying Plaintiff's request for a medical diet was medically unacceptable or that Dr. Dawson consciously disregarded an excessive risk. The only evidence in the record about the symptoms of Plaintiff's allergy is his statement that when he eats onions, he gets sores in his mouth. Without more, this injury is not the type of risk deemed excessive by the

Eighth Amendment.

It is true that PA Hengst believed that Plaintiff's allergy was strong enough that Plaintiff should be given a medical diet. Dr. Dawson disagreed. Plaintiff has not shown that Dr. Dawson's belief that a medical diet was not medically necessary was anything other than a difference of opinion, which is not actionable under § 1983. Therefore, because the decision to deny Plaintiff's request for a medical diet was not deliberately indifferent, the Court will grant Defendant Smith's Motion for Summary Judgment on the onion allergy issue.

2. Injured Hand

Plaintiff also alleges Defendants Johnston and Smith were deliberately indifferent to his medical needs regarding his injured hands. Johnston responds she was not involved in treating Plaintiff. Defendant Smith responds she is not liable as Plaintiff's medical needs were not ignored and medical staff did not act with deliberate indifference to the alleged injury.

a. Johnston not liable as she did not treat Plaintiff.

Again, Plaintiff has sued the wrong defendants. Nothing in the record before this Court indicates that Johnston was involved in the treatment of Plaintiff's injured hand. A nurse does not order x-rays, only a doctor or PA orders x-rays. Johnston's lack of involvement in the treatment, removes her from liability under § 1983 and summary judgment should be granted in her favor.

**MEMORANDUM ORDER - 12**

> b. Smith is not liable in a supervisory capacity as medical needs were addressed.

Plaintiff has failed to establish a serious medical need was ignored by ISCI staff in order hold Defendant Smith liable in a supervisory capacity. Plaintiff is familiar with the need to file a kite for medical treatment. Plaintiff alleges he filed kites, but has not submitted copies for the Court to review. The medical records indicate Plaintiff's hand was examined within 24 hours of his written complaint. Plaintiff's alleges he requested his hand to be examined earlier and even assuming this statement is true, he has not shown that the delay caused serious harm since the hand specialist did not recommend any treatment. Mere delay is not a constitutional violation since no serious harm resulted. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). Furthermore, if the alleged harm appears to be an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1991) (citations omitted).

It is undisputed that after Plaintiff's hand was examined, he was referred to a specialist that indicated no further treatment was necessary. Plaintiff also returned to the specialist for a follow up and no additional treatment was recommended. Accordingly, Plaintiff has failed to establish that a serious medical need was ignored by the medical staff or that the alleged delay caused any harm to his hand. Plaintiff again seems to be arguing that he does not agree with the medical diagnosis regarding his hand. However, Plaintiff has not rebutted the medical opinion with qualified medical evidence. Mere difference of opinion as to treatment does not rise to the level of a constitutional violation.

**MEMORANDUM ORDER - 13**

*Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Plaintiff has not established that "the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk'" to Plaintiff's health. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004)

Defendant Smith is not trained to provide medical services and Plaintiff's disagreement with the course of action on his hand does not rise to the level of a constitutional violation of deliberate indifference by a supervisor. Any delay in examination of Plaintiff's hand was not the fault of medical personnel since they responded to the hurt arm and elbow and were not aware of the alleged injury to Plaintiff's hand until a written complaint was filed. Once filed, Plaintiff was treated in a timely manner by the doctor and specialist. No reasonable juror could find that Defendant Smith acted with deliberate indifference regarding the alleged hand injury. Summary judgment should be granted in Defendant Smith's favor.

## CONCLUSION

Having reviewed the record in this matter, the Court finds the medical personnel have not been deliberately indifferent to Plaintiff's medical needs. Rather, the trained medical professional has considered the relevant medical information and reached a determination different than Plaintiff's opinion (which is primarily based on the result of his RAST allergy test). The IDOC has a policy that requires the Regional Medical Director to determine if special diets are medically necessary and it appears that the

IDOC has followed this policy. While the Plaintiff may not like the conclusion reached, the conclusion is supported by medical analysis and this Court is not going to substitute its judgment for that of a trained medical profession such as Dr. Dawson. Should the Plaintiff have evidence of a physical reaction to onions, he should report that right way to the prison medical personnel so that a further evaluation can occur.

The medical personnel have also reached a different medical conclusion on Plaintiff's hand injury. The medical records reflect Plaintiff was seen within a day of filing a written complaint about his hand and that the hand specialist determined no further treatment was necessary. There is no evidence that a serious medical condition was ignored or that the alleged delay caused harm to Plaintiff.

Finally, the Court finds the named defendants were not responsible for making Plaintiff's medical treatment decisions and cannot be held liable under § 42 U. S. C. § 1983 as Plaintiff cannot show they proximately caused the alleged injury to Plaintiff. Further, the Court finds in viewing the facts in a light most favorable to the Plaintiff, the medical personnel were "consistently responsive" to Plaintiff's medical needs and no constitutional violation occurred so the Warden cannot be held liable. Accordingly, summary judgment in favor of the Defendants should be granted and the complaint dismissed in its entirety.

**ORDER**

NOW THEREFORE, IT IS HEREBY ORDERED that Defendant Johnston's Motion for Summary Judgment (Docket No. 31) is GRANTED.

**MEMORANDUM ORDER - 15**

IT IS FURTHER HEREBY ORDERED that Defendant Smith's Motion for Summary Judgment (Docket No. 40) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Amended Complaint (Docket No. 15) is DISMISSED with prejudice.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Summary Judgment by Default (Docket No. 87) (which is actually a motion for full review of the record) is DENIED AS MOOT based on the Court's granting the Defendants' motions for summary judgment.

DATED: **January 5, 2010**

*(signature)*
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM ORDER - 16**